## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ROBERT GARY MOORE,         *

Petitioner,             *

v.                       *       Civil Action No. JKB-20-512

WARDEN and           *
THE ATTORNEY GENERAL OF THE
STATE OF MARYLAND,    *

Respondents.         *

                    ***

### MEMORANDUM OPINION

Self-represented Petitioner Robert Gary Moore filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he collaterally attacks his 2011 convictions for possession of cocaine and possession of cocaine with intent to distribute. ECF 1, 4, 11. Respondents contend that the petition lacks merit. ECF 16.[1] The petition is ready for resolution and no hearing is necessary. *See* Loc. R. 105.6; *see also* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts*; *Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000). For the following reasons, the Court denies the petition in part and holds the petition in abeyance in part for further briefing, and grants Moore's Motion for Appointment of Counsel.

### BACKGROUND

On November 9, 2011, Robert Gary Moore was convicted after a jury trial in the Circuit Court for Baltimore City, Maryland of possession of cocaine and possession of cocaine with intent

---

[1]     Respondents originally filed a Limited Answer contending that the petition was unexhausted because Moore's postconviction proceedings were ongoing. ECF 6. Moore filed a Motion for Default Judgment (ECF 9) contending that his claims were in fact exhausted. Upon order of the Court (ECF 12), Respondents replied by filing a Supplemental Answer arguing that his claims lacked merit. ECF 16.

to distribute. ECF 16-5 at 79-80. On March 19, 2012, he was sentenced to eight years' imprisonment. ECF 16-6 at 16-17.

The Appellate Court of Maryland[2] summarized the facts adduced at trial as follows:

On November 3, 2009, at approximately 7:45 p.m., Detective Duane A. Weston, along with Detective Ronald Surratt, arrived at the 2000 block of East 20th street in Baltimore in an unmarked vehicle. The officers went to this location based on information they received from a reliable confidential informant. According to the informant, drug transactions were taking place out of a parked vehicle at this location. Upon arriving, Detective Weston saw [Moore] and Ms. Sara Hooker standing next to each other in front of a parked burgundy Chevrolet. No other persons were present.

Detective Wilson pulled up, exited his vehicle, and announced "police." Although wearing plain clothes, his police badge was displayed around his neck and his service weapon was visible (but not drawn).

At that point, [Moore] reached into his pocket, pulled out a plastic bag containing items consistent with street packaged narcotics, and then discarded it. Detective Weston was approximately five feet from [Moore] when this occurred. As soon as [Moore] discarded the plastic bag, he began to run. Detective Wilson gave chase. After about a block, Detective Weston caught up with and arrested [Moore]. Incident to the arrest, Detective Weston seized $450.00 in cash and a cell phone.

The narcotics discarded by [Moore] were recovered on the scene by Detective Surratt, whose trial testimony confirmed that of Detective Watson. Later chemical analysis showed there to be a total of 10.28 grams of cocaine, packaged in 90 individual gel caps, which Detective Surratt testified were packaged for distribution.

Both detectives testified for the State in its case-in-chief, as outlined above. Admitted into evidence were the narcotics, the cash, the cell phone and a laboratory report verifying the presence and weight of the cocaine.

[Moore] testified at trial and provided a different version of the night's events. According to [Moore], he had just left his house and was in the middle of the 1900 block of Chester Street, which runs perpendicular to East 20th Street. At that point, he said, a car pulled up beside him, two officers jumped out with guns drawn and

---

[2]      At the time Moore's case was litigated in the Maryland state courts, the Appellate Court of Maryland was named the "Court of Special Appeals" and the Supreme Court of Maryland was named the "Court of Appeals of Maryland." At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Appeals of Maryland to the Supreme Court of Maryland and the Court of Special Appeals to the Appellate Court of Maryland. The name change took effect on December 14, 2022.

placed him in handcuffs. According to [Moore], Detectives Weston and Surratt then walked him through an alley in back of North Avenue, brought him to the Chevrolet, and formally arrested him.

*State v. Moore*, No. 2902, Sept. Term 2018, 2019 WL 4017522, at *1–2 (Md. Ct. Spec. App. Aug. 26, 2019).

## FACTUAL AND PROCEDURAL HISTORY

### I.    Direct Appeal

Moore appealed his convictions to the Appellate Court of Maryland, asserting that the circuit court erred in failing to grant his motion for a mistrial and erred in instructing the jury on flight as evidence of guilt. ECF 16-1 at 8-24. In an unpublished opinion issued on October 18, 2013, the court affirmed the convictions and sentence. *Moore v. State*, No. 162, Sept. Term, 2012, slip op. at 1-3 (Oct. 18, 2013); ECF 16-1 at 61-70. There is no indication in the record that Moore filed a petition for a writ of certiorari with the Supreme Court of Maryland.

### II.   Post-Conviction Proceedings

On December 12, 2016, Moore filed a *pro se* petition for post-conviction relief in the Circuit Court for Baltimore City (ECF 16-1 at 72-105), which he amended *pro se* on March 7, 2018. *Id.* at 124-30. Moore's appointed counsel then also amended the petition on January 2, 2018. *Id.* at 116-23. Three hearings were held. At the first hearing on February 6, 2018, Moore called four witnesses to testify: Jean Williams (his mother), Mary Lloyd (appellate counsel), Sarah Hooker (his wife), and Larry Rosenberg (trial counsel). ECF 16-7. At the second hearing on April 10, 2018, the circuit court advised the parties that it received four letters from Moore that appeared to supplement his claims. The circuit court requested that Moore's counsel submit a memorandum clarifying Moore's claims. ECF 16-8. On April 24, 2018, Moore's counsel submitted a memorandum listing the following claims:

3

1. Ineffective assistance of counsel for failure to object to the admission of drug evidence because the State failed to give required advanced notice and failure to obtain impeachment evidence regarding the recovery and testing of the alleged drug evidence. ECF 16-1 at 131.

2. Ineffective assistance of counsel for failure to object to the admission of drug evidence without the physical presence of the chemist and others in the chain of custody. *Id* at 132.

3. The State failed to disclose *Brady*[3] material showing that the chemist was not part of the chain of custody and did not test the alleged drugs. *Id*.

4. Ineffective assistance of counsel for failure to object to the chain of custody documents and failing to obtain documents to impeach witnesses regarding the recovery and testing of the alleged drugs. *Id*.

5. Ineffective assistance of counsel for failure to call witnesses Sarah Hooker and Jean Williams. *Id*.

6. Ineffective assistance of appellate counsel for failing to raise prosecutorial misconduct as an issue on appeal. *Id*.[4]

At the third hearing on May 10, 2018, the circuit court heard oral argument. ECF 16-9.

The circuit court issued an opinion on August 3, 2018 granting Moore's petition and ordering a new trial based on the *Brady* claim. ECF 16-1 at 138-55. The circuit court determined that the State had suppressed a chain of custody document from the Baltimore Police Department's Evidence Control Unit ("ECU") and the document was material:

> Petitioner asserts that inconsistencies between the Chain of Custody offered at trial and the ECU Document offer fertile ground to impeach the State's case. Petitioner notes, as does the court, that at the post-conviction hearing, defense trial counsel testified that had the ECU Document been disclosed to him pre-trial, it would have provided the basis on which to enlarge his trial strategy to include impeachment of the State's chemist on cross-examination (and, therefore, a demand for the presence of the chemist at trial). The ECU Document does not bear the name of the chemist, Barry Verger, despite the Chain of Custody and Lab Report identifying Mr. Verger as the chemist who tested the alleged illicit substance. In stark contrast to the absence of any entry for December 9, 2009 on the ECU Document, the Chain of

---

[3]    Referencing *Brady v. Maryland*, 373 U.S. 83 (1963).

[4]    Phrasing of the claims has been slightly altered for clarity.

Custody form asserts Mr. Verger retrieved the item from the CDS Vault on December 9, 2009, at 7:52 AM. The court is persuaded and finds that this discrepancy pertains to a material element of the State's case; that had the ECU Document been produced, Petitioner's trial counsel would most likely have demanded the trial appearance of Mr. Verger in order to cross-examine him; and that counsel would then have cross-examined Mr. Verger to attempt to generate reasonable doubt as to the reliability of the State's evidence pertaining to the illicit nature of the substance the State charged Petitioner with possessing.

. . . Had the ECU Document been produced, Petitioner's defense would not have been relegated to the confines of merely challenging the possession element of the charges, but rather would have had a robust alternative (if not primary) basis to generate reasonable doubt that the substance in question (even were it in Petitioner's possession) was illicit in nature. With an opportunity to challenge the credibility of the chemist and the lab report, defense counsel would have been equipped with two independent bases on which the jury might very well find Petitioner not guilty. In sum, the court finds that suppression of the ECU Document foreclosed an entire theory of defense and, had the ECU Document been disclosed, "there is a substantial possibility that the outcome in [this] case would have been different such that we cannot have confidence in the verdict." *Wilson*, 363 Md. at 352 . . . .

*Id.* at 150-53. The court rejected Moore's claims of ineffective assistance of counsel.

The Appellate Court of Maryland granted the State's application for leave to appeal on the *Brady* claim. ECF 16-1 at 184-216. As Appellee, Moore asked the court, *inter alia*, to review the circuit court's denial of his ineffective assistance of trial counsel claim with respect to the ECU chain of custody report. ECF 16-1 at 156-83. An opinion was issued on August 26, 2019. *State v. Moore*, No. 2902, Sept. Term 2018, 2019 WL 4017522 (Md. Ct. Spec. App. Aug. 26, 2019).

The opinion neither affirmed nor denied the circuit court, noting that the trial transcript reflected that the ECU chain of custody report may have been entered as an exhibit at trial during Detective Surratt's testimony, which altered the analysis under *Brady*.[5] A remand order was issued directing the circuit court to make a factual finding whether the report was admitted into evidence at trial. *Id.* at *8.

---

[5] The Appellate Court of Maryland cited the following passage from *Accord In re Matthew S.*, 199 Md. App. 436, 459-60 (2011): "Evidence known to the defendant or his counsel, that is disclosed, even if during trial is not considered suppressed as that term is used in *Brady*."

5

On remand, the circuit court held a hearing, heard oral argument from the parties, and took the matter under advisement. ECF 16-10. On February 7, 2020, the circuit court issued an order denying Moore's entire petition, including the *Brady* claim originally found to be meritorious and the ineffective assistance of trial counsel claim with respect to the ECU chain of custody report. ECF 16-1 at 257–66. The circuit court concluded that the ECU chain of custody report was, in fact, introduced by the State as an exhibit at trial. *Id.* at 258–60. Citing Maryland law,[6] the circuit court determined that a document produced mid-trial is not a *Brady* violation if it can be effectively used by the defense. *Id.* at 260-61. The circuit court also concluded that Moore's counsel was not ineffective for failing to object or use the document at trial to impeach the State's witnesses because "[r]equiring that trial counsel exhibit the presence of mind and capacity to compare the two multi-page documents- on the fly, mid-testimony to identify any material inconsistencies worthy of exploitation places a burden on trial counsel neither contemplated nor articulated by [Sixth Amendment precedent]." *Id.* at 263.

Moore sought leave to appeal the circuit court's ruling with the Appellate Court of Maryland. ECF 6-1 at 47-50. Leave was denied on August 13, 2020. ECF 16-1 at 269.

## III.   Petition for Federal Habeas Relief

Moore's § 2254 petition was received by this Court for filing on February 26, 2020. The petition raises five claims: (1) ineffective assistance of counsel during post-conviction proceedings; (2) the circuit court erred during post-conviction proceedings by denying access to the ECU chain of custody report; (3) ineffective assistance of appellate counsel for failing to raise prosecutorial misconduct as an error on appeal; (4) ineffective assistance of counsel for not calling witnesses to testify at trial; and (5) ineffective assistance of trial counsel for failing to inspect and

---

[6]   The Fourth Circuit has held that there is no *Brady* violation if the evidence is disclosed in time for effective use at trial. *See United States v. Smith Grading & Paving, Inc.,* 760 F.2d 527, 532 (4th Cir.1985).

object to the ECU chain of custody report at trial. The first two claims were not raised by Moore in his direct appeal brief or in his post-conviction petition. Moore's federal habeas corpus petition does not include the *Brady* claim that was litigated during post-conviction proceedings or the two errors alleged on direct appeal. Respondents contend that all five of Moore's federal habeas corpus claims are without merit and should be dismissed. ECF 16.

## JURISDICTION

In reviewing Moore's petition, the Court became aware of Moore's subsequent convictions in 2013 in the Circuit Court for Baltimore City for one count of first degree murder, four counts of attempted first degree murder, and five counts of use of a handgun in a crime of violence. These convictions resulted in six consecutive life sentences plus one hundred years. *Moore v. State,* No. 2522 Sept. Term 2013, 2016 WL 3365837 (Md. Ct. Spec. App. June 16, 2016). The Court questioned whether Moore had completed his sentence for the relevant drug offenses and was only "in custody" for the 2013 convictions at the time he filed his federal habeas corpus petition. *See Maleng v. Cook,* 490 U.S. 488 (1989) (explaining that the "in custody" language of habeas corpus statute requires that the petitioner be "in custody" under conviction or sentence under attack at the time his petition is filed).

An Order was issued on November 30, 2022, directing Respondents to brief the issue of Moore's custody status as of the date he filed his federal habeas corpus petition and provide supporting documentation. ECF 18. Respondents provided documentation showing that the Circuit Court for Baltimore City sentenced Moore on January 28, 2014, and ordered the six consecutive life sentences plus one hundred years to run consecutive to the eight-year sentence for his 2011 drug convictions. ECF 19-2 at 36. Accordingly, this Court has jurisdiction and may proceed to address Moore's petition. *See Garlotte v. Fordice*, 515 U.S. 39 (1995) (explaining that

7

a petitioner who is serving consecutive state sentences is "in custody" and may attack the sentence scheduled to run first, even after it has expired, until all sentences have been served).[7]

## STANDARD OF REVIEW

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted); *see also White v Woodall*, 572 U.S.415, 419-20 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement")).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States;" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court (1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or (2)

---

[7] The Court questions whether the presumption of collateral consequences as sufficient to sustain jurisdiction is rebutted in this matter. *See Spencer v. Kemna*, 523 U.S. 1, 10 (1998) (explaining that the most generalized and hypothetical of collateral consequences are sufficient to avoid mootness). Considering the length of Moore's subsequent sentence, it seems as if even the most generalized and hypothetical collateral consequences—that are not separate and apart from his murder convictions—would not exist. In any event, the Court will assume jurisdiction in this matter because Respondents have not argued that the presumption is rebutted and because the Supreme Court has not indicated whether the presumption of collateral consequences is rebuttable.

"confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis under § 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 785 (internal quotation marks omitted).

Further under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id.* "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S 766, 773 (2010).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have

"resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.* at 379.

## INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment to the Constitution guarantees a criminal defendant the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Buck v. Davis*, 137 S.Ct. 759, 775 (2017). To mount a successful challenge based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth in *Strickland*, 466 U.S. at 687-88. *See Williams*, 529 U.S. at 390. First, the petitioner must show that counsel's performance was deficient. Second, the petitioner must show that he was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687; *see Buck*, 137 S. Ct. at 775.

With regard to the first prong, the petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688; *see Harrington*, 562 U.S. at 104. The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 690). The Supreme Court recently reiterated that the "first prong sets a high bar." *Buck*, 137 S. Ct. at 775. Notably, a "lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" *Id.* (citation omitted). The standard for assessing such competence is "highly deferential" and has a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 669. Judicial scrutiny of counsel's performance must be "'highly deferential'" and not based on hindsight. *Stokes v. Stirling*, 10 F.4th 236, 246 (4th Cir. 2021) (citing *Strickland*, 466 U.S. at 689).

Second, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." *Id.* at 687. To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Buck,* 137 S. Ct. at 776. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland,* 466 U.S. at 687. A strong presumption of adequacy attaches to counsel's conduct, so strong in fact that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *Id.* at 696. Thus, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. A petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins,* 560 U.S. 370, 390 (2010).

In evaluating whether the petitioner has satisfied the two-pronged test set forth in *Strickland,* a court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland,* 466 U.S. at 697. Nor must a court address both components if one is dispositive. *Jones v. Clarke,* 783 F.3d 987, 991 (4th Cir. 2015). This is because failure to satisfy either prong is fatal to a petitioner's claim. As a result, "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland,* 466 U.S. at 697.

## ANALYSIS

### I.     Ground One- Ineffective Assistance of Post-Conviction Counsel

In Ground One, Moore claims that his post-conviction counsel was ineffective because he

did not thoroughly question trial counsel during the February 6, 2018 hearing.  Moore also contends that his post-conviction counsel failed to obtain and enter relevant documents into evidence. ECF 1 at 8-11; ECF 11 at 11-15. Respondents acknowledge that this claim is unexhausted but urge the Court to exercise its discretion pursuant to 28 U.S.C. § 2254(b)(2) and deny the claim on the merits. ECF 16 at 18-28.

28 U.S.C. § 2254(b)(2) permits a federal court, in its discretion, to deny on the merits a habeas corpus claim despite the applicant's failure to exhaust available remedies in state court. *See Swisher v. True*, 325 F.3d 225, 232-33 (4th Cir. 2003) (affirming district court's discretionary decision to elect to deny habeas corpus relief on the merits pursuant to § 2254(b)(2), although claim was "clearly unexhausted").

Further, 28 U.S.C. § 2254(i) statutorily prohibits habeas relief based on ineffective assistance of post-conviction counsel, providing that "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." Accordingly, the Court will deny this claim on the merits.

## II.     Ground Two- Error During Post-Conviction Proceedings

In Ground Two, Moore contends that the circuit court erred in denying his *pro se* Motion to Compel. ECF 1 at 7, 11-15; ECF 11 at 11-15. On April 27, 2018, Moore filed a motion seeking to compel the State and his post-conviction counsel to produce the "court files and chain of custody." ECF 16-1 at 134-35.  Moore accused the circuit court and his counsel of being in "cahoots" to hide the documents. *Id.* at 134.  The circuit court denied Moore's motion as moot, finding that he had been provided with the opportunity to inspect his trial, appeal, and post-conviction records. *Id.* at 136-37.  Like Ground One, Respondents urge the Court to exercise its

discretion and deny this unexhausted claim on the merits. ECF 16 at 18-28.

"A state prisoner has no federal constitutional right to post-conviction proceedings in state court." *Lawrence v. Branker*, 517 F.3d 700, 717 (4th Cir. 2008) (citing *Lackawanna Cty. Dist. Att'y v. Coss*, 532 U.S. 394, 402 (2001)). Therefore, "even where there is some error in state post-conviction proceedings, a petitioner is not entitled to federal habeas relief because the assignment of error relating to those post-conviction proceedings represents an attack on a proceeding collateral to detention and not to the detention itself." *Id.*; *see Wright v. Angelone*, 151 F.3d 151, 159 (4th Cir. 1998) (where a petitioner argued that the state supreme court denied him equal protection when it determined in a state collateral proceeding that he could be tried as an adult in circuit court, there was no "basis for federal habeas relief" because the petitioner was "not ... detained as a result of" that determination); *see also Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988) ("[C]laims of error occurring in a state post-conviction proceeding cannot serve as a basis for federal habeas corpus relief.").

Moore is not detained because the circuit court denied a motion to compel during post-conviction proceedings. Ground Two, which is an attack on a proceeding collateral to Moore's detention, is not cognizable in a federal habeas corpus petition and is therefore without merit.

## III.   Ground Three- Ineffective Assistance of Appellate Counsel

In Ground Three, Moore contends that his appellate counsel was ineffective because she failed to raise the issue of prosecutorial misconduct in his direct appeal. ECF 1 at 7, 15-17; ECF 11 at 15-17. Specifically, Moore contends that his appellate counsel should have argued that the prosecutor engaged in misconduct by asking him during cross-examination if the police officers were lying during their testimony and by mentioning the veracity of the police officers during closing argument. *Id.*

13

In applying the *Strickland* test to claims of ineffective assistance of counsel on appeal, reviewing courts must accord appellate counsel the "presumption that [they] decided which issues were most likely to afford relief on appeal." *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1993). "Winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536, (1986). The Supreme Court has reiterated that "it [will be] difficult to demonstrate that counsel was incompetent." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). "'Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.'" *Id.*

Moore raised Ground Three in his Maryland post-conviction petition. The circuit court dismissed the claim, concluding:

> Petitioner raises two incidents of alleged prosecutorial misconduct he asserts appellate counsel should have raised. Both issues relate to "were-they-lying" questions the State asked Petitioner during cross-examination. While inquiring regarding the night in question, the State asked Petitioner whether the police officers were lying when they testified to facts that differed from Petitioner's version of events. Such questions are improper and may require reversal. *Hunter v. State*, 397 Md. 580, 596 (2007). Here, however, the trial court sustained both timely objections of defense counsel during the line of questioning. Petitioner argues that, although the court sustained defense counsel's objections, the court erroneously failed to strike the offending portions of the examination. This court is not persuaded that the Court of Special Appeals (or Court of Appeals) would have found plain error of the trial court for its failure, sua sponte, to instruct the jury to disregard or to strike the offending portions from the record. Petitioner further asserts prosecutorial misconduct occurred when, during closing argument, the State made mention of the veracity of the police officers, presumably in reference to the area of inquiry on which the court sustained defense counsel's objections. Petitioner takes the position, as argued at the post-conviction hearing, that there was no downside to raising the issue of prosecutorial misconduct on appeal. As the Supreme Court has noted however, "a brief that raises every colorable issue runs the risk of burying good arguments ... in a verbal mound made up of strong and weak contentions." *Jones v. Barnes*, 463 U.S. 745, 753 (1983). "Maryland law is clear that counsel have great latitude in the presentation of closing arguments, and any restriction of remarks is within the trial court's sound discretion." *Wise v. State*, 132 Md. App; 127, 142 (2000). The court is not

persuaded either state appellate court would have found reversible or plain error had this issue been raised on appeal. Therefore, no relief shall be granted on this basis, as Petitioner fails to satisfy either *Strickland* prong.

ECF 16-1 at 147-49.

The standard for a successful prosecutorial misconduct claim is difficult to meet. *See Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974) (explaining that to prevail on a claim of prosecutorial misconduct, a defendant must show that the prosecutor's misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process"). In light of this standard and the deference owed, both to counsel's selection of issues to pursue on appeal and to the circuit court's conclusions during post-conviction proceedings, this Court finds that Ground Three is without merit.

## IV.   Ground Four- Ineffective Assistance of Trial Counsel for Failure to Call Witnesses

In Ground Four, Moore contends that his trial counsel was ineffective for failing to call two fact witnesses at trial: Jean Williams (his mother) and Sarah Hooker (his wife). ECF 1 at 7, 17-20; ECF 11 at 17-20. Moore raised this claim in his post-conviction petition. ECF 16-1 at 120-22.

As noted above, the circuit court heard testimony at the February 8, 2018 hearing from Moore's trial counsel, Larry Rosenberg. ECF 16-7. Rosenberg testified that it is not his normal practice to call civilian witnesses during a drug trial, including family members, because there is a risk they will hurt the case and because they lack credibility. *Id.* at 58-59. The circuit court concluded that Moore's claim for ineffective assistance failed on the "deficient performance" prong because Rosenberg's decision not to call Williams and Hooker was sound trial strategy. ECF 16-1 at 146-47.

Choosing which witness to call is a classic example of trial strategy for which an attorney

has broad discretion. *See United States v. Chapman*, 593 F.3d 365, 369 (4th Cir. 2010) (explaining that the "decision of which witnesses to call is quintessentially a matter of strategy for the trial attorney"); *see also United States v. Terry*, 366 F.3d 312, 317 (4th Cir. 2004) (citing *United States v. Kozinski*, 16 F.3d 795, 813 (7th Cir. 1994) (explaining that the decision whether to call a defense witness is "a 'strategic decision' demanding the assessment and balancing of perceived benefits against perceived risks, and one to which '[w]e must afford...enormous deference.'")). Trial counsel's strategic decision not to call Williams and Hooker to testify at trial is entitled to deference under the *Strickland* standard.[8] The circuit court's conclusion that Moore's trial counsel was not ineffective is neither contrary to nor an unreasonable application of federal law.

## V.    Ground Five- Ineffective Assistance of Trial Counsel Regarding ECU Report

In Ground Five, Moore contends that his trial counsel was ineffective because he failed to object to the introduction of the ECU chain of custody report ("ECU report") at trial and because he failed to adequately inspect and utilize the ECU report at trial. ECF 1 at 7, 20-25; ECF 11 at 20-25. Moore argues that his counsel should have noticed when the prosecution entered the ECU report into evidence mid-trial that the name of the chemist that tested the drugs, Gary Verger, did not appear on the document. As noted above, Moore presented this claim in his petition for post-conviction relief. The circuit court's initial opinion denied Moore's ineffective assistance of counsel claim but granted his *Brady* claim. ECF 16-1 at 142-44; 149-54.

After remand from the Appellate Court of Maryland, the circuit court concluded that the ECU report had been introduced at trial as State's Exhibit "2" (*Id.* at 258-60) and that neither

---

[8]     The circuit court did not address the "prejudice" prong of the *Strickland* standard. Moore argued that Williams would have offered testimony that the $450 dollars found on him at time of arrest was a gift from her and his wife would have offered testimony that contradicted the police officers' account that she was present when the arrest occurred. ECF 16-1 at 121. Moore testified in his own defense at trial and offered a version of events consistent with the proffered testimony of these witnesses. ECF 16-4 at 194, 198. Therefore, in reaching a guilty verdict, the jury rejected Moore's version of events. Accordingly, Moore also cannot meet the "prejudice" prong of the *Strickland* test.

Moore nor his counsel had actual or constructive knowledge of the ECU report before trial (*Id.* at

261). However, the circuit court dismissed Moore's ineffective assistance of counsel claim,

finding:

> ... [D]espite trial counsel's fulsome discovery requests and pre-trial investigation, the State failed to produce the ECU Document pre-trial- which means defense counsel never saw it until day two of trial in the middle of Detective Surratt's testimony. Requiring that trial counsel exhibit the presence of mind and capacity to compare the two multi-page documents- on the fly, mid-testimony to identify any material inconsistencies worthy of exploitation places a burden on trial counsel neither contemplated nor articulated by *Strickland* and its progeny. *Strickland v. Washington*, 466 U.S. 668 (1984). Put another way, to equate trial counsel's performance in this instance to an empty chair flirts with absurdity. *Id.* at 687 (holding that a petitioner must persuade the court that "counsel made errors so serious that counsel was not functioning as the 'counsel guaranteed the defendant by the Sixth Amendment."). For these reasons, no post-conviction relief shall be granted on this basis.[9]

*Id.* at 263-64. This Court cannot say that the circuit court unreasonably applied *Strickland* to the

facts, considering the close examination required to appreciate the significance of the ECU report.

Moore chose not to assert a prosecutorial misconduct claim based on *Brady v. Maryland*

in his federal habeas petition. Moore is clear and consistent in his federal habeas corpus

submissions about the claims he is asserting, none of which include a *Brady* claim. ECF 1, 4, 11,

17. However, the circuit court's conclusions on the *Brady* claim appear to be inconsistent with its

conclusion on the ineffective assistance of counsel claim. With respect to the *Brady* claim, after

remand from the Appellate Court of Maryland, the circuit court concluded that there was no

violation because trial counsel had the opportunity to cross-examine the chemist and the police

officer about the contents of the ECU report. ECF 16-1 at 260–61. The court so concluded after

explaining that "evidence disclosed for the first time at trial does not constitute a *Brady* violation,

---

[9]     The circuit court also concluded that even if counsel had appreciated the nature of the document during trial, it would not have faulted him for making a strategic decision not to use it given that his trial strategy was to challenge the fact that Moore was never in control or had custody of the alleged drugs. ECF 16-1 at 262-63.

provided the defense is given an opportunity to use the evidence to its advantage." *Id.* This conclusion is difficult to square with the circuit court's conclusion that counsel could not have been expected to actually use this document during the course of trial.

Because of the arguably inconsistent positions in the circuit court's opinion, the Court concludes that the issue requires further review and briefing, and will appoint counsel to assist Moore in that further briefing. Was there prejudice to Moore in reference to the timing of the *Brady* disclosure and/or counsel's advocacy in relation thereto?

## MOTION TO APPOINT COUNSEL

Moore has filed a Motion to Appoint Counsel. ECF 21. In light of this Court's conclusion that Ground Five deserves further review, the Court finds that it is in the interests of justice to appoint counsel to represent Moore on this issue. Accordingly, Moore's motion shall be granted. *See* 18 U.S.C. § 3006A(a)(2)(B) (providing "[w]henever the United States magistrate judge or the court determines that the interests of justice so require, representation may be provided for any financially eligible person who[,]" *inter alia*, has filed for habeas relief). The Court will appoint the Federal Public Defender for the District of Maryland pursuant to 18 U.S.C. §3006A(a)(2)(B) and 28 U.S.C. § 2254(h) for the limited purpose of assisting Moore in further briefing Ground Five and, perhaps, reframing that ground through appropriate processes.

## CONCLUSION

For the foregoing reasons, the Petition is denied in part and held in abeyance in part, and the Court will grant Moore's Motion to Appoint Counsel for the limited purpose described above.

Dated this __10__ day of __March__, 20__.

FOR THE COURT:

James K. Bredar
Chief Judge