IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ROBERT GARY MOORE, | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. JKB-20-512 |
| WARDEN and THE ATTORNEY GENERAL OF THE STATE OF MARYLAND, | * * | |
| Respondents. | * | |
| | *** | |

## MEMORANDUM OPINION

Self-represented Petitioner Robert Gary Moore filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he collaterally attacks his 2011 convictions for possession of cocaine and possession of cocaine with intent to distribute. ECF 1, 4, 11. On March 13, 2023, the Court issued a Memorandum Opinion dismissing four of Moore's five claims; remaining is Ground Five, which alleges ineffective assistance of trial counsel for failing to inspect and object to a chain of custody report at trial. ECF 22. The Court also granted Moore's motion for appointment of counsel. *Id.* Before counsel entered an appearance, Moore filed a motion *pro se* entitled "Motion of Questions," which appears to be interrogatories to Respondents. ECF 25.

Counsel entered an appearance on Moore's behalf on April 10, 2023 (ECF 26) and filed a Motion to Amend on June 23, 2023. ECF 31. The Motion to Amend seeks to add a claim to Moore's habeas petition that his due process rights were violated under *Brady v. Maryland*, 373 U.S. 83 (1963), because the prosecution failed to disclose the Evidence Control Unit ("ECU")

1

chain of custody document prior to trial. *Id.* Respondents oppose[1] Moore's Motion to Amend, arguing that the Court inappropriately raised the *Brady* claim in its March 13, 2023, Memorandum Opinion and arguing that the *Brady* claim is procedurally defaulted. ECF 32 at 14-19, 23-29. Respondents alternatively contend that the *Brady* claim should be dismissed because it lacks merit. *Id.* at 41-56.

The petition is ready for resolution and no hearing is necessary. *See* Loc. R. 105.6; *see also* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts*; *Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000). For the following reasons, the Court denies Moore's Motion for Questions (ECF 25) and grants Moore's Motion to Amend (ECF 31). Relief will be granted on Moore's *Brady* claim.

## RELEVANT BACKGROUND

On November 9, 2011, Robert Gary Moore was convicted after a jury trial in the Circuit Court for Baltimore City, Maryland of possession of cocaine and possession of cocaine with intent to distribute.[2] ECF 16-5 at 79-80. On March 19, 2012, he was sentenced to eight years' imprisonment. ECF 16-6 at 16-17. In his post-conviction proceedings, Moore raised several claims, including a claim that the state committed a *Brady* violation by suppressing a chain of custody report and a claim that his counsel was ineffective for failing to adequately utilize the chain of custody report at trial. ECF 16-1 at 132. After three hearings (ECF 16-7, 16-8, 16-9) the post-conviction court found Moore's *Brady* claim meritorious, and on August 3, 2018, it issued an opinion granting Moore's petition. ECF 16-1 at 138-55.

---

[1] Respondents are reminded of their responsibility to comply with Local Rule 102.2(b).

[2] A complete recitation of the facts adduced at trial, as recounted by the Appellate Court of Maryland, can be found in the Court's March 13, 2023, Memorandum Opinion (ECF 22).

The Appellate Court of Maryland granted the State's application for leave to appeal on the *Brady* claim. ECF 16-1 at 184-216. As Appellee, Moore asked the court, *inter alia*, to review the circuit court's denial of his ineffective assistance of trial counsel claim with respect to the ECU chain of custody report. *Id.* at 156-83. An opinion was issued on August 26, 2019. *State v. Moore*, No. 2902, Sept. Term 2018, 2019 WL 4017522 (Md. Ct. Spec. App. Aug. 26, 2019). The Appellate Court of Maryland noted that the post-conviction court's analysis relied on the fact that the chain of custody report had never been produced to the defense, but the trial transcript reflected that the report may have been entered as an exhibit at trial. The Appellate Court of Maryland cited the following passage from *In re Matthew S.*, 199 Md. App. 436, 459-60 (2011): "Evidence known to the defendant or his counsel, that is disclosed, even if during trial is not considered suppressed as that term is used in *Brady*." The opinion neither affirmed nor denied the circuit court but issued a remand order directing the circuit court to make a factual finding whether the report was admitted into evidence at trial. *Id.* at *8.

On February 7, 2020, the post-conviction court issued an order denying Moore's entire petition, including the *Brady* claim originally found to be meritorious. ECF 16-1 at 257-66. The post-conviction court concluded that the ECU chain of custody report was introduced by the State as an exhibit at trial (*id.* at 258-60) and a document produced mid-trial is not a *Brady* violation if it can be effectively used by the defense. *Id.* at 260-61. However, the post-conviction court also concluded that Moore's counsel was not ineffective for failing to object or use the document at trial to impeach the State's witnesses because "[r]equiring that trial counsel exhibit the presence of mind and capacity to compare the two multi-page documents – on the fly, mid-testimony – to identify any material inconsistencies worthy of exploitation places a burden on trial counsel neither contemplated nor articulated by [Sixth Amendment precedent]." *Id.* at 263.

3

Moore sought leave to appeal the circuit court's ruling with the Appellate Court of Maryland. ECF 6-1 at 47-50. Leave was denied on August 13, 2020. ECF 16-1 at 269.

## MOTION TO AMEND

28 U.S.C. § 2242 provides that a habeas corpus petition "may be amended or supplemented as provided in the rules of procedure applicable to civil actions." The general standard for considering a motion to amend under Fed. R. Civ. P. 15(a) was enunciated by the United States Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962):

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of any allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be "freely given."

371 U.S. at 182. Moore's Motion to Amend his petition to add the proposed *Brady* claim satisfies the requirements of Rule 15. However, Respondents advance two arguments for why the amendment should not be allowed. Neither argument is persuasive. The Court will address each in turn.

First, Respondents argue that the Court inappropriately raised the *Brady* claim in its March 13, 2023, Memorandum Opinion, and cite to the Fourth Circuit opinion in *Folkes v. Nelsen*, 34 F.4th 258 (2022). The Court disagrees. In *Folkes,* the district court ran afoul of the boundary between jurist and advocate because it extracted facts from post-conviction hearing testimony and identified an entirely new ineffective assistance of counsel claim that had never been raised in the state courts by the petitioner.

Here, Moore's appointed counsel filed a Motion to Amend the petition to add the *Brady* claim. As noted above, the proposed *Brady* claim was aggressively litigated by Moore and

Respondents in post-conviction proceedings. It relies on the same core of operative facts as the ineffective assistance of counsel claim raised by Moore in his original habeas petition: the timing and effect of the state's disclosure of the ECU chain of custody report. Unlike the claim in *Folkes*, the *Brady* claim here is so intertwined with the ineffective assistance of counsel claim that Respondents have long been on notice of its factual and legal basis, have litigated its merits in state court, and are not prejudiced by the amendment.

The Court disagrees with Respondents' characterization of the Court's Order (ECF 23) as *sua sponte* raising a new claim. The Court's Memorandum Opinion (ECF 22) determined that justice required appointment of counsel for further exploration of the existing ineffective assistance of counsel claim and any other arguments that may be beneficial to Moore. Counsel for Moore has now sought to amend the petition to add a *Brady* claim and Respondents do not contend the amendment is improper under Rule 15.

Next, Respondents argue that Moore should not be permitted to amend his petition because his proposed *Brady* claim is unexhausted and procedurally defaulted. ECF 32 at 23-29. The Court disagrees. Respondents contend that Moore omitted the *Brady* claim from his application for leave to appeal the denial of his post-conviction petition because it does not appear in one section of the form under the heading, "Reasons the Circuit Court Erred…" *Id.* Respondents invite the Court to entertain a technicality that overlooks the fact that Moore spelled out the following in his application: *Did the state commit a Brady violation?* ECF 6-1 at 48. Moore clearly put the Appellate Court of Maryland on notice that he wanted his *Brady* claim to be reviewed. The proposed *Brady* claim is not unexhausted or procedurally defaulted.

Moore's Motion to Amend (ECF 31) is granted and the Court will address the *Brady* claim on the merits.

## STANDARD OF REVIEW

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted); *see also White v Woodall,* 572 U.S. 415, 419-20 (2014) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement" (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States;" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court (1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or (2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis under § 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101

6

(quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 785 (internal quotation marks omitted).

Further, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id.* "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S 766, 773 (2010).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.* at 379.

## INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment to the Constitution guarantees a criminal defendant the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Buck v. Davis*, 137 S. Ct. 759, 775 (2017). To mount a successful challenge based on a Sixth Amendment claim

7

of ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth in *Strickland*, 466 U.S. at 687-88. *See Williams*, 529 U.S. at 390. First, the petitioner must show that counsel's performance was deficient. Second, the petitioner must show that he was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687; *see Buck*, 137 S. Ct. at 775.

With regard to the first prong, the petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688; *see Harrington*, 562 U.S. at 104. The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 690). The Supreme Court recently reiterated that the "first prong sets a high bar." *Buck*, 137 S. Ct. at 775. Notably, a "lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" *Id.* (citation omitted). The standard for assessing such competence is "highly deferential" and has a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 669. Judicial scrutiny of counsel's performance must be "'highly deferential'" and not based on hindsight. *Stokes v. Stirling*, 10 F.4th 236, 246 (4th Cir. 2021) (citing *Strickland*, 466 U.S. at 689).

Second, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." *Id.* at 687. To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Buck*, 137 S. Ct. at 776. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland*, 466 U.S. at 687. A strong presumption of adequacy attaches to counsel's conduct, so strong in

8

fact that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *Id.* at 696. Thus, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. A petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

In evaluating whether the petitioner has satisfied the two-pronged test set forth in *Strickland*, a court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. Nor must a court address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015). This is because failure to satisfy either prong is fatal to a petitioner's claim. As a result, "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

## ANALYSIS

In his newly-added *Brady* claim, Moore contends that the state violated his due process rights when it failed to produce the ECU chain of custody report ("ECU report") before trial. ECF 31-1. In Ground Five, Moore contends that his trial counsel was ineffective because he failed to object to the introduction of the ECU report at trial and because he failed to adequately inspect and utilize the ECU report at trial. ECF 1 at 7, 20-25; ECF 11 at 20-25.

*Brady v. Maryland* instructs, "the suppression by the prosecution of evidence favorable to an accused" violates due process where the evidence is "material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). For a court

9

to find a *Brady* violation, it must determine that the evidence was 1) favorable to the accused, 2) suppressed by the prosecution (either willfully or inadvertently), and 3) material. *Banks v. Dretke*, 540 U.S. 668, 691 (2004). Evidence that is favorable to the accused includes both exculpatory (whether requested by defendant or not) and impeachment evidence. *Id.*; *see United States v. Bagley*, 473 U.S. 667, 676 (1985) (holding that the *Brady* rule includes impeachment evidence).

The touchstone of materiality is a "concern that the suppressed evidence might have affected the outcome of the trial." *United States v. Agurs*, 427 U.S. 97, 104 (1976). Accordingly, an individual alleging a *Brady* violation must demonstrate that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682. Although this analysis can entail an examination of the nature and strength of the prosecution's case, the materiality test is not an evaluation of the sufficiency of the non-suppressed evidence, nor does it require the defendant to prove, by a preponderance of the evidence, that he would have been acquitted if the suppressed evidence had been disclosed. *See Kyles v. Whitley*, 514 U.S. 419, 434-435 (1995). The materiality inquiry is not just a matter of determining whether, after discounting the inculpatory evidence in light of the undisclosed evidence, the remaining evidence is sufficient to support the jury's conclusions. Rather, the question is whether "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Strickler v. Greene*, 527 U.S. 263, 290 (1999), quoting *Kyles,* 514 U.S. at 435.

On remand from the Appellate Court of Maryland, the post-conviction court ultimately concluded that the ECU report was favorable and material, but it was not suppressed because defense counsel was "free to cross-examine" the state's witnesses on the "discrepancies between the ECU Document and the Chain of Custody Record admitted into evidence." ECF 16-1 at 260-

261. However, in the very same opinion, when addressing Moore's ineffective assistance of counsel claim, the post-conviction court concluded that defense counsel *could not have used the ECU report effectively at trial*:

> ... [D]espite trial counsel's fulsome discovery requests and pre-trial investigation, the State failed to produce the ECU Document pre-trial – which means defense counsel never saw it until day two of trial in the middle of Detective Surratt's testimony. Requiring that trial counsel exhibit the presence of mind and capacity to compare the two multi-page documents – on the fly, mid-testimony – to identify any material inconsistencies worthy of exploitation places a burden on trial counsel neither contemplated nor articulated by *Strickland* and its progeny. *Strickland v. Washington*, 466 U.S. 668 (1984). Put another way, to equate trial counsel's performance in this instance to an empty chair flirts with absurdity. *Id.* at 687 (holding that a petitioner must persuade the court that "counsel made errors so serious that counsel was not functioning as the 'counsel guaranteed the defendant by the Sixth Amendment.'"). For these reasons, no post-conviction relief shall be granted on this basis.

*Id.* at 263-264. As noted by the Court in the March 13, 2023, Memorandum Opinion, the post-conviction court did not unreasonably apply *Strickland* to the facts, considering the close examination required to appreciate the significance of the ECU report. As such, Ground Five is without merit and is dismissed.

The post-conviction court did, however, unreasonably apply the facts to Moore's *Brady* claim when it denied his *Brady* claim on the first prong of the analysis, finding that the ECU report had not been suppressed because evidence produced mid-trial does not violate *Brady* if the defense is able to use it effectively. *Id.* at 260. Reasonable jurists would not disagree that defense counsel could not simultaneously be capable and incapable of effectively cross-examining the state's witnesses with the ECU report. The post-conviction court's denial of Moore's *Brady* claim on the grounds that defense counsel could have effectively used the ECU report at trial is an unreasonable determination of the facts. Moore is therefore entitled to a *de novo* review of his *Brady* claim. *See Rose v. Lee*, 252 F.3d 676, 690 (4th Cir. 2001) (finding that when a state court decision is contrary

to clearly established federal law a federal habeas court has an obligation to review state court judgments *de novo* to determine whether issuance of a writ is warranted).

Was the ECU Report Suppressed?

The Fourth Circuit has held that there is no *Brady* violation if the evidence is disclosed in time for effective use at trial. *See United States v. Smith Grading & Paving, Inc.*, 760 F.2d 527, 532 (4th Cir. 1985). Respondents do not dispute *Brady*'s timing requirement but maintain that the ECU report was not suppressed because the post-conviction court reasonably concluded that Moore's defense counsel could have effectively used it at trial. ECF 32 at 39-46. Respondents argue that the post-conviction court's opinion is not internally inconsistent because the standards for a *Brady* claim and an ineffective assistance of counsel claim are different. *Id.* The standards for relief on the two claims are indeed different, but a conclusion based on the same facts cannot change within the same opinion, regardless of the standard to which it applies.

The post-conviction court went to great effort to explain why it was difficult for defense counsel to appreciate the significance of the ECU report "on the fly" at trial. ECF 16-1 at 263-264. The Court's independent review of the ECU report and the lab report confirms this conclusion. *Id.* at 108-110. Time would be required to compare the two documents side-by-side to notice that the chemist who allegedly tested the evidence for illicit substances did not appear on the ECU report. The Court therefore finds that the evidence was not disclosed in time for effective use at trial, and that the ECU report was therefore suppressed.

Was the ECU Report Favorable and Material?

The post-conviction court originally concluded that the ECU report was favorable to Moore because it was impeaching. *Id.* at 151-152. The lab report produced to the defense prior to trial shows that the chemist who tested the evidence for the presence of illicit drugs retrieved the

12

evidence from ECU vault at 7:52 p.m. on December 9, 2009, but this transaction does not appear on the ECU report. *Id.* at 151-152. The post-conviction court concluded that the ECU report could have been used by the defense to create reasonable doubt that the substance the police recovered from Moore was an illegal one. *Id.* The post-conviction court also originally concluded that the ECU report was material because the state's failure to disclose it prevented Moore from pursuing an alternative defense that the substance the police recovered was not illicit, which was an essential element of the offense. *Id.* at 152-153.

Respondents dispute that the ECU report is favorable or material, arguing that the chemist would have been able to explain away the apparent inconsistencies in the documents. ECF 32 at 50-56. Despite the opportunity, Respondents did not offer any testimony in state court to support the contention that the ECU report (which does not document the chemist's interaction with the evidence) is consistent with the lab report (which does document the chemist's interaction with the evidence). Indeed, the ECU report itself states, "[t]he following is a chronological list of all transactions performed on this item: . . . " ECF 16-1 at 108.

"[Impeachment evidence is] material where the witness supplied the only evidence of an essential element of the offense. This is especially true where the undisclosed matter would have provided the only significant basis for impeachment." *United States v. Bartko*, 728 F.3d 327, 339 (4th Cir. 2013) (internal citations omitted); *see also United States v. Parker*, 790 F.3d 550, 558 (4th Cir. 2015) (internal citations omitted). In contrast, impeachment evidence is not material if "it is 'cumulative of evidence of bias or partiality already presented and thus would have provided only marginal additional support for the defense.'" *Id.*

The discrepancy between the lab report and the ECU report gives the appearance that the evidence offered by the state on the testing of the drug evidence may not be an accurate

13

representation of what occurred. The ECU report was impeachment evidence. Because the state was required to prove that the substance Moore possessed was indeed illicit, the impeachment value of the ECU report renders it material.

The Court finds that habeas relief is warranted on Moore's *Brady* claim. The post-conviction court's denial of the claim was an unreasonable determination of the facts, particularly in light of the inconsistent conclusions with respect to the *Brady* claim and the ineffective assistance of counsel claim. On *de novo* review, the Court finds that the elements of *Brady* have been satisfied. The state suppressed the ECU report because, although it was produced mid-trial, close examination was required to appreciate its significance. The ECU report was favorable and material because it calls into question an essential element of the offense – whether Moore was in possession of an illicit substance. The inconsistencies between the lab report and the ECU report call into question an essential element of the offense that undermines the confidence of the verdict.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases provides that "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability, a habeas petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Buck v. Davis*, 137 S. Ct. 759, 773 (2017); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects constitutional claims on the merits, a petitioner satisfies this standard by demonstrating that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck*, 137 S. Ct. at 773 (citation omitted). When a petition is denied on procedural grounds, the petitioner meets the standard by showing that reasonable jurists "would find it

debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Moore has not made the requisite showing on the dismissed claims. Accordingly, the Court declines to issue a certificate of appealability. Moore may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003).

## CONCLUSION

For the foregoing reasons, Moore's Motion of Questions (ECF 25) is denied as moot. His Motion to Amend (ECF 31) is granted. Ground Five is dismissed and the Petition is granted on Moore's *Brady* claim. His subject conviction and sentence is vacated and the case is remanded to the Circuit Court of Baltimore City for a new trial. However, this Court's judgment will be STAYED FOR THIRTY (30) DAYS to allow for an appeal.

By separate Order, the Petition for Writ of Habeas Corpus shall be granted on Moore's *Brady* claim and a certificate of appealability shall be denied on Moore's remaining claims.

Dated this __13__ day of February, 2024.

FOR THE COURT:

James K. Bredar
Chief Judge